NOT YET SCHEDULED FOR ORAL ARGUMENT

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 22-1220

FEDERAL EDUCATION ASSOCIATION STATESIDE REGION,

*Petitioner,*

*v.*

FEDERAL LABOR RELATIONS AUTHORITY,

*Respondent.*

*On Appeal from the Federal Labor Relations Authority in No. FLRA-0-AR-5590*

## BRIEF FOR PETITIONER

RICHARD J. HIRN
5335 Wisconsin Avenue, NW,
  Suite 440
Washington, DC 20015
Tel.: (202) 274-1812
richard@hirnlaw.com

BENJAMIN HUNTER
*General Counsel*
FEDERAL EDUCATION ASSOCIATION
STATESIDE REGION/NEA
329 East 89th Street, 4W
New York, New York 10128
Tel.: (202) 834-3427

bhunter@nea.org

– and –

SUZANNE E. SUMMERLIN
FEDERAL EDUCATION ASSOCIATION
1201 16th Street, NW
Washington, DC 20036
Tel.: (407) 913-9321
ssummerlin@nea.org

*Counsel for Petitioner*

December 16, 2022



## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

The following parties appeared before the Federal Labor Relations Authority below: the Federal Education Association Stateside Region (affiliated with the National Education Association) and the U.S. Department of Defense, Domestic Dependents Elementary and Secondary Schools.

The following are parties in this Court: the Federal Education Association Stateside Region (affiliated with the National Education Association) (Petitioner) and the Federal Labor Relations Authority (Respondent).

### B.    Rulings Under Review

The Petitioner seeks review of the decisions and orders of the Federal Labor Relations Authority in *United States Department of Defense, Domestic Dependent Elementary and Second Schools and Federal Education Association Stateside Region,* 72 F.L.R..A 601

(December 20, 2021), *motion for recons. denied,* 73 F.L.R..A 149 (August 16, 2022).

### C.    Related Cases

The case on review has not previously been before this Court or any other court. No related cases are pending in this Court or in any other court.

 /s/ Richard J. Hirn

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
richard@hirnlaw.com

Attorney for the Federal Education
Association Stateside Region/NEA
D.C. Bar No. 291849

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED
    CASES ............................................................................... i

TABLE OF AUTHORITIES ...................................................... v

GLOSSARY ............................................................................ xi

STATEMENT OF SUBJECT MATTER AND APPELLATE
    JURISDICTION .................................................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 2

STATUTES AND REGULATIONS ........................................... 4

STATEMENT OF THE CASE ................................................... 4

    a.    Introduction ................................................................ 4

    b.    Relevant ground rule provisions ............................. 6

    c.    Negotiations for a successor agreement hit their
        first snag ................................................................. 7

    d.    FEA-SR and DDESS resume negotiations, but again
        reach an impasse ..................................................... 9

    e.    DDESS implements the purported agreement even
        though the parties continued to discuss its contents
        and even though the agreement was never signed ............. 13

    f.    The Union files two grievances over DDESS's conduct
        that are consolidated for arbitration ...................... 17

    g.    Arbitrator Orkin rules that the parties are not done
        bargaining and that the 2005 agreement remains
        in effect ................................................................. 21

    h.    The Authority vacates Mr. Orkin's Award .............. 24

SUMMARY OF ARGUMENT .................................................. 26

STANDING ............................................................................ 31

APPLICABLE STANDARD OF REVIEW ............................... 32

ARGUMENT ........................................... 33

I.    The Authority's initial and fundamental error was its failure to defer to Arbitrator Orkin's factual finding that bargaining over a successor agreement had not been completed and that the parties did not have a meeting of the minds over a new agreement ....................... 33

II.   The Authority erred by disregarding the parties' multiple agreements that the new contract would not be submitted for agency head review nor go into effect until it was executed by the parties ........................... 41

III.  Although Panel decisions are not subject to direct review by the Authority or by the courts, the legality of a Panel-imposed contract provision may be collaterally reviewed in arbitration when necessary to resolve a grievance ............................................ 48

      A.    The Union's grievances did not seek direct review of the Panel's order. But under Authority case law, Arbitrator Orkin was permitted to consider the legality of the contract provision imposed by the Panel when resolving a grievance over DDESS's alleged unilateral imposition of a new agreement before bargaining had been completed ................................... 48

      B.    The critical flaw in the Authority's *FEA-SR* decisions is their asymmetry. These decisions allow agencies to challenge the legality of a Panel decision, but functionally preclude unions from doing so ................................................. 56

      C.    The Authority had it right when it told the District Court in 2020 that unions have a statutory right to obtain review of the legality of a Panel decision by filing a charge or grievance alleging that an agency committed an unfair labor practice by unilaterally implementing an ostensibly invalid Panel-imposed agreement. It is now judicially estopped from arguing otherwise .......... 59

CONCLUSION ........................................ 60

iv

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Am. Fed'n of Gov't Emps., Local 2327,*
  5 F.L.R.A. 189 (1981)..............................................................41

*Amer. Fed'n of Gov't Emps. v. FLRA,*
  778 F.2d 850 (D.C. Cir. 1985).................................................50

*Amer. Fed'n of Gov't Emps., Local 1815,*
  69 F.L.R.A. 309 (2016).................................................28, 45, 46

*Amer. Fed'n of Gov't Emps., Local 32 v. FLRA,*
  853 F.2d 986 (D.C. Cir. 1988).................................................33

*Amer. Fed'n of Gov't Emps., Local 3254,*
  73 F.L.R.A. 325 (2022).........................................................27, 33

*Amer. Fed'n of Gov't Emps., Nat'l VA Council,*
  39 F.L.R.A. 1055 (1991)...........................................................45

*Antilles Consol. Educ. Ass'n v. FLRA,*
  72 F.L.R.A. 414 (2021)............................................................20

*Antilles Consol. Educ. Ass'n v. FLRA,*
  977 F.3d 10 (D.C. Cir. 2020) .............................................20, 30

*Ass'n of Admin. L. Judges v. Fed. Serv. Impasses Panel,*
  No. CV 20-1026 (ABJ), 2021 WL 1999547
  (D.D.C. May 19, 2021) .......................................48-49, 61, 63

*Ass'n of Civilian Technicians, Kentucky Long Rifle Chap.,*
  70 F.L.R.A. 968 (2018)...................................................29, 42, 44

*Bureau of Alcohol, Firearms and Tobacco v. FLRA,*
  464 U.S. 89 (1983) ..................................................................32

*Council of Prison Locals v. Brewer,*
  735 F.2d 1497 (D.C. Cir. 1984) ...............................................48

*Dep't of Commerce, Patent and Trademark Office,*
  60 F.L.R.A. 869 (2005).............................................................34

*Dep't of Def. Domestic Dependent Elementary &
    Secondary Schs.,*
    72 F.L.R.A. 601 (2021).................................................1, 24, 25, 34, 38,
                                                        42, 44, 45, 48, 49, 52,
                                                        53, 54, 57, 58, 66

*Dep't of Def. Domestic Dependent Elementary &
    Secondary Schs.,*
    73 F.L.R.A. 149 (2022)..................................................1, 26, 47, 48, 53,
                                                        55, 56, 58, 64, 66

*Dep't of Def. Educ. Activity, Domestic Dependent
    Elementary & Secondary Schools,*
    18 F.S.I.P. 073 (2018) ..........................................................................13

*Dep't of Def. Educ. Activity,*
    56 F.L.R.A. 119 (2000)........................................................29, 51, 53-54

*Dep't of Def., Def. Language Inst., Foreign Language Ctr,*
    64 F.L.R.A. 735 (2006)..........................................................27, 34, 35, 53

*Dep't of Def., Domestic Dependent Elementary
    & Secondary Schs., Ft. Buchanan,*
    71 F.L.R.A. 127 (2019), *aff'd in relevant part sub nom.,
    Antilles Consol. Educ. Ass'n v. FLRA*, 977 F.3d 10
    (D.C. Cir. 2020) ........................................................................12, 20, 30

*Dep't of Energy, Off. of Sci. & Tech. Info.,*
    63 F.L.R.A. 219 (2009)..........................................................................39

*Dep't of Homeland Security, Customs and Border Protection,*
    61 F.L.R.A. 136 (2005)..........................................................................34

*Dep't of the Air Force, Lowry Air Force Base,*
    48 F.L.R.A. 589 (1993)..................................................................27, 36

*Dep't of the Army, Corps of Engineers, Northwestern Div.
    and Seattle Dist.,*
    64 F.L.R.A. 405 (2010)..................................................................27, 33

*Dep't of the Interior,*
    No. OALJ 15-05, 2014 WL 6085552 (Nov. 4, 2014) .............................37

*Dep't of the Navy, Naval Aviation Depot, Cherry Point, N.C. v. FLRA*,
  952 F.2d 1434 (D.C. Cir. 1992) .......................................................32, 33

*Dep't. of Agriculture*,
  71 F.L.R.A. 491 (2019)..................................................................47

*Fort Bragg Ass'n of Teachers*,
  44 F.L.R.A. 852 (1992)..............................................................15, 42

*Int'l Assn. of Masters, Mates & Pilots*,
  36 F.L.R.A. 555 (1990)..................................................................42

*Internal Rev. Serv. v. FLRA*,
  963 F.2d 429 (D.C. Cir. 1992)..........................................................33

*Internal Rev. Serv., North Florida Dist.*,
  55 F.L.R.A. 222 (1999)..................................................................40

*Interpretation and Guidance*,
  15 F.L.R.A. 564 (1984), *aff'd Amer. Fed'n of Gov't Emps. v. FLRA*, 778 F.2d 850 (D.C. Cir. 1985)......................................................53

*Interpretation and Guidance*,
  11 F.L.R.A. 626 (1983)..................................................................51

*Int'l Ass'n of Machinists & Aerospace Workers*,
  886 F.2d 1200 (9th Cir. 1989) ..........................................................38

*Major League Baseball Players Ass'n v. Garvey*,
  532 U.S. 504 (2001) ......................................................................35

*Nat'l Labor Relations Bd.*,
  72 F.L.R.A. 334 (2021)..........................................................30, 51, 52

*Nat'l Labor Relations Board Prof. Assn. v. FSIP*,
  No. 8:20-cv-888-ABJ, ECF No. 32......................................................61

*Nat'l Treasury Emps. Union v. FLRA*,
  45 F.4th 121 (D.C. Cir. 2022) ....................................................43, 48

*Nat'l Treasury Emps. Union*,
  64 F.L.R.A. 504 (2010)..................................................................36

*Nat'l Treasury Emps. Union,*
    71 F.L.R.A. 962 (2020)..................................................................52-53

*Nat'l Treasury Emps. Union,*
    72 F.L.R.A. 151 (2021)..................................................................40, 46

*Nat'l Treasury Emps. Union,*
    73 F.L.R.A. 315 (2022)...........................................................................18

*Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel,*
    552 F. Supp. 3d 21 (D.D.C. Feb. 10, 2021) ..............................49, 62, 63

*Nat'l Weather Serv. Employees Org. v. FSIP,*
    No. 1:20-CV-1563.................................................................................62

*Nat'l Weather Serv. Emps. Organ. v. FLRA,*
    966 F.3d 875 (2020) ...........................................................................35

*New Hampshire v. Maine,*
    532 U.S. 742 (2001) .....................................................................64, 65

*NLRB v. Brown,*
    380 U.S. 278 (1965) ...........................................................................32

*Overseas Educ. Ass'n v. FLRA,*
    824 F.2d 61 (D.C. Cir. 1987) ...............................................................18

*Panama Canal Comm.,*
    54 F.L.R.A. 1316 (1998)........................................................................36

*Patent Office Professional Assn.,*
    41 F.L.R.A. 795 (1991)..........................................................................46

*Prof. Air Traffic Controllers Organ.,*
    7 F.L.R.A. 34 (1981)..............................................................................57

*Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.,*
    823 F.3d 524 (9th Cir. 2016) ...............................................................38

*State of New York, Div. of Military and Naval Affairs,*
    2 F.L.R.A. 185 (1979).......................................................................48, 53

*Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173,
    Int'l Ass'n of Machinists & Aerospace Workers,*
    886 F.2d 1200 (9th Cir. 1989) .............................................................38

*Temple Univ. Hosp., Inc. v. NLRB,*
  929 F.3d 729 (D.C. Cir. 2019)................................................65

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ........................................................59

*U.S. Army Corps of Eng'rs, Kan. City Dist.,*
  16 F.L.R.A. 456 (1984).....................................................53

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,*
  484 U.S. 29 (1987) .....................................................27, 35

*United States v. Owens,*
  54 F.3d 271 (6th Cir. 1995) ................................................64

**Statutes and Other Authorities:**

5 U.S.C. § 706(2)(A).........................................................32
5 U.S.C. § 7101 ..............................................................1
5 U.S.C. § 7114 .......................................................5, 7, 15
5 U.S.C. § 7114(b)(5) .......................................................46
5 U.S.C. § 7114(c).........................................................6, 7
5 U.S.C. § 7114(c)(2) .......................................................46
5 U.S.C. § 7116 .............................................................18
5 U.S.C. § 7116(a)(1) .......................................................18
5 U.S.C. § 7116(a)(5) ...............................................18, 19, 24
5 U.S.C. § 7116(d) ..........................................................18
5 U.S.C. § 7119 .....................................................25, 50, 52
5 U.S.C. § 7119(c)(1) ........................................................9
5 U.S.C. § 7119(c)(2) ........................................................9
5 U.S.C. § 7119(c)(5)(A)(ii) .................................................9
5 U.S.C. § 7122(a) ........................................................1, 8
5 U.S.C. § 7122(a)(2)....................................................27, 35

5 U.S.C. § 7123 .................................................................32

5 U.S.C. § 7123(a) ....................................................1, 2, 31

5 U.S.C. § 7311 .................................................................58

18 U.S.C. § 1918.................................................................58

# GLOSSARY

| | |
|---|---|
| Arbitrator | Neil Orkin |
| DCPAS | U.S. Department of Defense, Defense Civilian Personnel Advisory Service |
| DDESS | U.S. Department of Defense, Defense Dependents Elementary and Secondary Schools |
| FEA-SR | Federal Education Association, Stateside Region |
| FSIP | Federal Service Impasses Panel |
| FSLMR Statute | Federal Service Labor-Management Relations Statute |
| JA | Joint Appendix |
| Management | Department of Defense, Defense Dependents Elementary and Secondary Schools |
| Statute | Federal Service Labor-Management Relations Statute |
| Union | Federal Education Association, Stateside Region |

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The Federal Education Association Stateside Region ("FEA-SR")
petitions for review of a decision of the Federal Labor Relations
Authority ("Authority") issued on December 20, 2021, reported at 72
F.L.R.A. 601 (JA367-JA371), and an Order Denying FEA-SR's Motion
for Reconsideration issued on August 16, 2022, reported at 73 F.L.R.A.
149 (JA381-JA385). In its decision the Authority overturned an award
of Arbitrator Neal Orkin that found that the Department of Defense
Domestic Dependent Elementary and Secondary Schools ("DDESS")
committed various unfair labor practices.

The Authority had jurisdiction to resolve Exceptions filed by
DDESS challenging Arbitrator Orkin's award under Section 7122(a) of
the Federal Service Labor Management Relations Statute ("the Statute"
or "the FSLMR Statute"). 5 U.S.C. §§ 7101, 7122(a).  The Petitioner was
a party to that arbitration case.

This Court has jurisdiction to review the Authority's decision
under 5 U.S.C. § 7123(a) because Arbitrator Orkin's Award, and the
Authority's decision setting aside that Award, involved an unfair labor

1

practice. This Petition for Review was timely filed on August 24, 2022, within the 60-day period following the Authority's August 16, 2022 order denying the Petitioner's Motion for Reconsideration. 5 U.S.C. § 7123(a).

This appeal is from a final order of the Authority that disposes of all the parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The Supreme Court and the Authority have held that an arbitrator's factual findings are not subject to review. The Authority has held that whether parties have entered into a collective bargaining agreement is a question of fact, not of law. Did the Authority err by not deferring to Arbitrator Orkin's factual finding that bargaining over a successor agreement had not been completed?

The Federal courts and the Authority have held that there must be a meeting of the minds "shown by conduct manifesting an intention to be bound by agreed upon terms . . . before a labor contract is created." Did the Authority err by holding that no further action was required to

finalize a successor agreement following the Federal Service Impasses

Panel's decision when the expiring collective bargaining agreement, a

settlement agreement, the parties' ground rules, and even the new

collective bargaining agreement itself required the parties to execute

the new agreement, signifying that the parties had a "meeting of the

minds" and an intention to be bound, before it became effective?

The Authority has previously held that the validity of a Panel

decision may collaterally be reviewed by an arbitrator when necessary

to resolve a grievance. In defending a series of cases that various unions

brought to directly challenge Panel decisions, the Authority also told

the District Court that unions may file unfair labor practices grievances

that challenge the validity of Panel decisions. Was the Authority's

holding in this case that review of a Panel decision can only be obtained

through unfair labor practice procedures initiated by a party alleging

noncompliance with a Panel order arbitrary and capricious, and is the

Authority judicially estopped from arguing that this is the exclusive

manner in which the validity of Panel decisions may be challenged?

## STATUTES AND REGULATIONS

Pertinent statutes are set forth in the separately bound addendum filed with this brief.

## STATEMENT OF THE CASE

### a.    Introduction.

This case is an example of the Federal Labor Relations Authority's failing to defer to the findings of an arbitrator and failure to apply the correct standards of arbitral review. Arbitrator Neal Orkin ruled that the Department of Defense Domestic Dependent Elementary and Secondary Schools ("DDESS") improperly imposed an unexecuted collective bargaining agreement on one of its teacher unions. The Authority disregarded the arbitrator's factual findings that negotiations had not been completed. In doing so, the Authority mischaracterized the Union's grievance as a direct attack on a related decision of the Federal Service Impasses Panel ("Panel" or "FSIP") that imposed a provision of the new agreement and repudiated statements it had recently made in numerous cases in U.S. District Court (in which other unions sought actual direct review of Panel decisions) that unions could obtain review

of the legality of Panel- imposed contract provisions through the grievance and arbitration procedures.

The collective bargaining agreement at issue would govern the employment conditions of the teachers and other educational professionals employed at the schools operated by DOD for military dependents on or near bases in seven states and Guam. These 2,500 educators are represented by the Federal Education Association Stateside Region ("FEA-SR"). The last FEA-SR collective bargaining agreement was negotiated in 2005 and provided an at-school workday of seven and one-half hours. (JA148). The contract also provided that teachers would be paid their daily rate in the event that the school year was extended to make up for school closures due to emergencies. (JA147). The initial term of the 2005 agreement was four years. In the event that either party gave notice to renegotiate it at the end of that term, DDESS and the Union agreed in the duration article that "the Agreement shall remain in effect *until that bargaining is concluded and new provisions are executed* and approved in accordance with 5 U.S.C. 7114." (JA151). (emphasis added).

DDESS notified the Union that it wanted to renegotiate the agreement shortly before it expired in 2009. This dispute arose during the course of those negotiations.

## b.    Relevant ground rule provisions.

In 2010 the parties agreed to ground rules for the renegotiation of the agreement. One of the ground rules provided that "until the entire Article has been agreed to, the Parties are free to reopen any previously agreed to sections or sub-sections of an Article" of the successor agreement. On the other hand, the parties agreed that once they had tentatively agreed to the entirety of a particular article in the new contract, "further negotiation of the substance of the Article will not be permitted, except upon mutual consent." (JA128).

In the Federal sector, every collective bargaining agreement is "subject to approval by the head of the agency." The Federal Service Labor Management Relations Statute requires the head of the agency to approve a new agreement "within 30 days from the date the agreement is executed" if it is in accordance with law. 5 U.S.C. § 7114(c). In the 2010 ground rules, the parties agreed that the DOD schools would not send the new agreement up the chain for agency head review until

6

agreement was reached on all proposals and provisions, *and the agreement was signed*:

> Once agreement is reached on all proposal/provisions of the collective bargaining agreement, and it is signed, the agreement will be formally executed (signed and dated) and submitted for Agency Head review in accordance with 5 U.S.C. 7114.

(JA131). The ground rules also reiterated that "[t]he collective bargaining agreement executed on 6 December 2005 shall remain in effect until bargaining is concluded and the new provisions are executed and approved in accordance with 5 U.S.C. 7114(c) and these Ground Rules." (JA123).

## c.    Negotiations for a successor agreement hit their first snag.

After the parties were unable to reach an agreement after several years of negotiations, the Union and DDESS agreed to submit the unresolved issues to interest arbitration. However, neither side was happy with the interest arbitration award issued by Arbitrator Hilpp. The Authority has sole jurisdiction to consider Exceptions to arbitral awards in the Federal sector, but it may only set aside an arbitration award if it is contrary to law or "on other grounds similar to those

7

applied by Federal courts in private sector labor-management relations." 5 U.S.C. § 7122(a). Both the Union and Management filed Exceptions to his award with the Authority. The Union also filed an unfair labor practice charge against DDESS. These disputes were submitted to the Authority's "Collaboration and Alternative Dispute Resolution Office"[1] where an Authority staff attorney brokered a settlement that involved scrapping Arbitrator Hilpp's award and resuming negotiations where they left off. (JA060).

But what is important for today's controversy is that DDESS made a renewed commitment in the settlement agreement that "[t]he current MLA [Master Labor Agreement] will remain in full force and effect until superseded by *a properly executed* Master Labor Agreement." (JA262). (emphasis added). The Union's Director and negotiating team member explained that this language was added by the Authority's mediator at her request. "I was very concerned the Agency may try to implement some kind of unagreed-to contract

---

[1] See https://www.flra.gov/components-offices/offices/collaboration-and-alternative-dispute-resolution-office-cadro .

because we had multiple sections that were not signed and agreed to piecemeal." (JA060).

### d.  FEA-SR and DDESS resume negotiations, but again reach an impasse.

Among the complete articles that the parties agreed to when they resumed bargaining was Article 11 covering Health and Safety, which included a section addressing what would happen if the schools were closed due to a weather or other emergency. As in the 2005 agreement, they agreed that Management could reschedule lost instructional days on days that were previously set aside for non-instructional activities, or that the agency could extend the 190-day work year – in which case the educators would be paid their daily rate. (JA356).

By the summer of 2018, the parties again reached impasse, and DDESS requested the assistance of the Federal Service Impasses Panel. The Panel is an entity within the Authority comprised of Presidential appointees that is charged with resolving Federal sector collective bargaining impasses "through whatever methods and procedures . . . it may consider appropriate." 5 U.S.C. § 7119(c)(1),(2),(5)(A)(ii).

The Panel directed the Union and DDESS to meet with one of its Members in a two-day "informal conference" in October 2018 in order to mediate their remaining disagreements. With the Member's assistance, the Union and DDESS reached tentative agreement on thirty of the forty or so outstanding issues, including one of the most disputed issues: the length of the at-school duty day. (JA072, JA074, JA091).

The DDESS educators had been working seven and one-half hours a day at school, which is typical for teachers in a public school system. (JA074).[2] DDESS sought to lengthen that duty day, but FSIP Member Czarnecki suggested a compromise. She proposed, and the parties tentatively agreed to, a provision (Article 18, § 1) that would retain the standard seven and one-half hour at-school workday but would create a bank of 24 hours each quarter that individual principals could use, if needed, to require teachers to attend meetings or training after school hours, without extra pay, provided three days' notice was given. (JA074, JA086, JA346). It was the Union's understanding that this bank of time

---

[2]  See survey conducted by National Council on Teacher Quality, https://www.nctq.org/contract-database/category/Calendar .

10

would not be used to permanently extend the teachers' duty hours. (JA086). As part of this tentative agreement, management's chief negotiator promised to provide a letter clarifying the intent of this provision. (JA092).

FEA-SR and DDESS also tentatively agreed to a duration clause during this mediation (Article 35, § 1) that once again confirmed that the new contract would not be submitted for "agency head review" and would not be effective until it was executed, and that "[t]his Agreement will be considered executed on the date of signatures by the parties' designated signatories." (JA348).

At the end of the October mediation, Panel Member Czarnecki directed the parties to file written submissions for the Panel's final determination of ten unresolved issues. (JA092). Among the outstanding issues was Management's proposal for Article 18, § 3(f) concerning "inclement weather," which permitted DDESS to reschedule school days missed due to inclement weather *without* additional compensation. (JA176). Before submissions were filed, the Union's chief negotiator wrote the DDESS's chief negotiator reminding him that the parties had already agreed on a provision in Article 11, "Health and

Safety," (and a related Appendix O) that addresses what would happen in the event a school was closed due to weather or another emergency (which provided for extra pay if the school year was extended), and since the parties had reached complete agreement on that article, under paragraph L of the ground rules "further negotiation of the substance of the Article will not be permitted, except upon mutual consent." The Union requested that DDESS withdraw its new, conflicting proposal from the Panel's consideration, but DDESS refused. (JA350-51). The Union then urged the Panel to decline jurisdiction over the DDESS's proposal for Article 18, § 3(f) because the issue had already been settled in negotiations when the parties agreed to Article 11, "Health and Safety." (JA177). Since there was already a tentative agreement on the issue of what would happen in the event of weather-related school closures, the parties were not at impasse on the issue and therefore the Panel did not have jurisdiction over it. *Dep't of Def., Domestic Dependent Elementary & Secondary Schs., Ft. Buchanan*, 71 F.L.R.A. 127, 132 (2019), *aff'd in relevant part sub nom.*, *Antilles Consol. Educ. Ass'n v. FLRA*, 977 F.3d 10, 17 (D.C. Cir. 2020).

12

The FSIP issued its decision resolving ten of the remaining issues on December 14, 2018. *Dep't of Def. Educ. Activity, Domestic Dependent Elementary & Secondary Schools*, 18 F.S.I.P. 073 (2018) (JA173). In its decision, the Panel rejected the Union's concerns over the conflict with Articles 11 and 18 and ordered the parties to adopt DDESS's proposal for Article 18, § 3(f). (JA178-79).

### e.     DDESS implements the purported agreement even though the parties continued to discuss its contents and even though the agreement was never signed.

On January 8, 2019, the parties' chief negotiators met telephonically to attempt to finalize their agreement and to tie up some issues that were still open after the Panel's order. (JA063). Their conversation was memorialized in an email the Union's chief negotiator, Mr. Hunter, sent DDESS's chief negotiator, Mr. King, on January 9. The email described what needed to be done before an agreement was complete and ready to execute and read in part:

> This message is a follow up to our discussion on Tuesday about the few outstanding issues regarding execution of a successor Master Labor Agreement.
>
> I could not find a signed tentative agreement for Article 22, section 3 . . . If we have not yet reached a

tentative agreement on the subsection, I am confident we will be able to do so. . .

(JA142). Mr. Hunter also reminded Mr. King that DDESS could not submit the new agreement for agency head review without the Union's signature:

> . . . Paragraph P of the parties' ground rules requires formal execution prior to the agency submitting the agreement for Agency Head review. Since the ground rules require the parties execute the final agreement (and given the fact that there are several substantive issues left to resolve) it would be inappropriate to submit anything to Agency Head Review until the parties review and formally execute a final agreement.

(JA142-43). Mr. King sent a copy of the draft agreement back to Mr. Hunter. His cover email acknowledged that the parties had not resolved final language for Article 22, § 3. Nonetheless, he asked Mr. Hunter to sign the incomplete draft agreement.  (JA141).

In the meantime, unbeknownst to the Union, DDESS submitted a compilation of the tentative agreements and the FSIP decision to the Defense Civilian Personnel Advisory Service ("DCPAS"), which has been delegated authority to conduct the "agency head review"

14

authorized by § 7114 of the FSMLR Statute. (JA094-JA095).[3] On

January 11, 2019, DCPAS "*conditionally approved*" the agreement

"subject to the mandatory understanding" that six provisions of the

contract (concerning maintenance of disciplinary records and release

time when a teacher is reassigned) are interpreted in a manner set

forth in the letter. (JA198, JA080). For example, Article 22, § 3(e)

provides that educators who are reassigned to a different school or

classroom "shall receive . . . normally one and one-half (1-1/2) weekdays

of release time from assigned duties to accomplish the move."[4] DCPAS

wrote:

> This provision is approved with the mandatory
> understanding that the parties, in implementing this
> provision, intend to recognize that the word "normally" does
> not establish a mandatory one and one-half (1-1/2) weekdays
> of release time. . . but is merely a recognition of what might
> constitute a reasonable amount of time for such a move or
> reassignment.

---

[3]  The agency head's authority to review, approve or disapprove
collective bargaining agreements is delegable. *Fort Bragg Ass'n of
Teachers*, 44 F.L.R.A. 852, 855 (1992).

[4]  As noted above, the parties had not yet reached an agreement to the
entirety of Article 22, § 3, although certain subsections were not in
dispute.

(JA199). Each of the other five provisions were approved "with the mandatory understanding" that both DDESS and FEA-SR "intend to recognize" DCPAS's particular interpretation of these provisions – an understanding that DDESS never sought or obtained from the Union. (JA198-JA200). In fact, the Union has not accepted DCPAS's interpretation. (JA087). The testimony of the Director of Labor and Employee Relations at DCPAS confirms that the parties never had a "meeting of the minds" over these provisions. He repeatedly characterized them as "objectionable" or "ambiguous or vague" and that it was up to the Union whether to agree or disagree with DCPAS's interpretation of these provisions. (JA113-JA114). "Now, it's up to them if they want to amend or reopen the agreement," he explained. (JA114).

On January 15 the Union's chief negotiator emailed DDESS's chief negotiator to say he was surprised to receive DCPAS's conditional approval letter. Mr. Hunter reminded Mr. King that "[o]n January 8, 2019 we discussed several items requiring further action prior to execution" and protested DDESS's submission of the agreement to DCPAS for review "prior to resolving the outstanding substantive

16

issues." Mr. Hunter requested that the parties "meet telephonically to resolve the open issues." (JA141).

That call was held on January 23. (JA063). Mr. Hunter summarized their conversation in a follow-up email, noting that they were "close to a resolution" on three outstanding issues, but that the inclusion of Article 18, § 3(f) was a "remaining roadblock" to executing a final agreement. (JA122). During this call, the DDESS agreed to the Union's proposed language for Article 22, § 3 and Mr. King again assured the Union that it would provide the side letter clarifying the intent of Article 18, § 1 (concerning the uncompensated bank of hours for after school meetings and training) that he had promised to provide during the October FSIP mediation, but which he had so far failed to do. (JA122, JA138).

**f.    The Union files two grievances over DDESS's conduct that are consolidated for arbitration.**

On February 9, the Union filed a grievance alleging that DDESS violated the parties' ground rules and committed a statutory unfair labor practice when it earlier submitted an unexecuted draft of the

successor agreement to DCPAS for agency head review.[5] "The unsigned

draft contained numerous tentative agreements that had not been

finalized as well as unresolved sections and subsections," the grievance

alleged, noting that the parties met telephonically as late as January 23

in an attempt to resolve open issues. (JA120).

Two days later DDESS's chief negotiator, Mr. King, sent the

Union an email claiming that the successor agreement had gone into

effect on January 11 when it was (conditionally) approved by DCPAS.

(JA137, JA063, JA079). Mr. Hunter responded that the parties had not

---

[5] "The Statute establishes essentially a two-track system" for resolving unfair labor practices that violate § 7116. Unions (or management for that matter) may either file an unfair labor practice charge with the General Counsel of the FLRA for investigation and possible adjudication before an Administrative Law Judge or may include the allegation of such a statutory violation in a grievance that may be brought before an arbitrator. *Overseas Educ. Ass'n v. FLRA*, 824 F.2d 61, 62 (D.C. Cir. 1987); 5 U.S.C. § 7116(d). Implementation of a Panel order prior to completion of bargaining on a successor agreement is an unfair labor practice in violation of 5 U.S.C. § 7116(a)(1) and (5). *Nat'l Treasury Emps. Union*, 73 F.L.R.A. 315, 319 (2022) (dismissing Exceptions to arbitration award finding that agency committed unfair labor practice by implementing Panel-imposed provisions before negotiations were complete).

finalized or executed the new agreement, and that Mr. King's February 11 email constituted an express repudiation of the 2005 labor agreement that remained in effect. (JA136). The Union then filed a second grievance over the DDESS's repudiation of the 2005 agreement and threat to implement the incomplete successor agreement. The grievance explained that the earlier agreement must remain in effect until a successor agreement was signed. "Formal execution is a requirement under the parties' ground rules, the expiring agreement and law before the [new] agreement becomes effective," the grievance explained. It stated that the Union would not sign a new agreement "until the parties have finalized the unsigned Articles and resolve[d] their dispute" over the legitimacy of Article 18, § 3(f). (JA133). As it did in the first grievance, the Union alleged that management's conduct violated § 7116(a)(5) of the FSLMR Statute, which makes it an unfair labor practice for an agency to refuse to negotiate in good faith.

On April 1, DDESS started to assign the teachers to work extended hours under Article 18, § 1 in a manner that differed from the Union's understanding and what it was told during the October mediation. Instead of using the bank of hours for after school meetings

and training on an as needed, ad hoc basis, DDESS simply extended the teachers' duty day by one-half hour every day. (JA 075, JA083, JA086).

On May 22, 2019, the Authority issued a decision involving a contract dispute between DDESS and another smaller, independent teachers' union that represents DDESS educators at four schools in Puerto Rico. At DDESS's behest, the Authority held that a provision in the Puerto Rico contract governing hours of work that was similar to Article 18, § 1 of the FEA-SR contract was an unenforceable infringement on DDESS's right to assign work. *Dep't of Def., Domestic Dependent Elementary & Secondary Schs., Ft. Buchanan*, 71 F.L.R.A. 127, 132 (2019).[6] Mr. Hunter notified DDESS that the Union was withdrawing its tentative agreement to Article 18, § 1, "[g]iven the fact that it was the Agency who took the position before the FLRA that a similar provision to the parties' tentative agreement was unenforceable." Mr. Hunter also explained that based on the manner in

---

[6] This determination was later set aside by this Court in *Antilles Consol. Educ. Ass'n v. FLRA*, 977 F.3d 10, 17 (D.C. Cir. 2020) as arbitrary and capricious. On remand, the Authority declined to say one way or another whether the contract provision was negotiable. 72 F.L.R.A. 414, 415-16 (2021).

which DDESS had implemented Article 18, § 1 (using the bank of time
to extend the teachers' workday by a half hour every day even though §
1 provides that the at-school duty day will remain at seven and one-half
hours) "it has become apparent to FEA-SR's bargaining team that the
parties did not have a meeting of the minds regarding the intent of the
drafted language." (JA365-JA366, JA074-JA075).

### g.   Arbitrator Orkin rules that the parties are not done bargaining and that the 2005 agreement remains in effect.

The Union's grievances were consolidated and submitted to
arbitration later that fall. In January 2020 Arbitrator Neal Orkin
issued a decision and award which sustained the grievances. "I find that
bargaining was never completed," he wrote, "and the Agency engaged in
unfair labor practices by its refusal to continue negotiations on the
unresolved segments of the MLA [master labor agreement.]" (JA023).

Mr. Orkin found that DDESS should have continued bargaining
over Article 18 for several reasons. First, he found that Article 18, § 3(f)
(which says that the school year can be extended without additional
compensation when schools are closed due to bad weather) is "wholly at
odds" with Article 11, § 5(b) (which says that teachers will get paid for

21

working on make-up days). "The conflict between the two terms is

evident," he wrote and this inconsistency should have been resolved

through further negotiations:

> A plain reading of the two sections clearly displays a conflict
> that should have been resolved through negotiations. . .
> From a strictly contractual perspective the contested section
> is unenforceable. . .[T]he union's notification should have
> convinced the Agency of its likely unenforceability, and
> negotiations should have continued.

(JA019).

Second, he separately found that the Panel "should not have

issued a decision ordering the parties to accept the Agency's proposed

version of Article 18, Section 3(f) because it was a permissive subject of

bargaining" since "the subject matter was already covered by Article

11." (JA021).

The Arbitrator further found that the Union could properly

withdraw its earlier tentative acceptance of Article 18, § 1 concerning

the hours of work under paragraph L of the ground rules "as bargaining

on Article 18 remained incomplete." (JA022). In sum, he found that

"[t]he agency had an obligation to continue bargaining in good faith

with the Union." (JA022).

On another issue, Mr. Orkin found that DDESS "did not have the authority to submit the MLA for Agency Head review without the proper signatures." (JA020). "The Agency sent an unexecuted and unsigned MLA for Agency Head Review; it had no authority to do so." He found that DDESS violated paragraph P of the ground rules and the duration clause of the disputed agreement which requires the parties to sign the new agreement before DDESS could submit it for agency head review. (JA020, JA022).

In addition to finding that management violated the 2005 agreement as well as the parties' ground rules by failing to continue bargaining and by implementing the new agreement, Mr. Orkin also found that DDESS committed an unfair labor practice by violating its statutory duty to bargain in good faith:

> I find that bargaining was never completed, and the Agency engaged in unfair labor practices by its refusal to continue negotiations on the unresolved segments of the MLA. The Agency had no right or authority to implement an agreement without the consent of the Union. . . Instead it chose to take the extraordinary and unprecedented step by attempting to force the Union to accept a clause that is clearly unenforceable on its face, effectively delegitimizing the collective bargaining process. The essence of collective bargaining requires mutual assent by both parties; that did not occur in the present case.

23

> The totality of conduct by the Agency presents a clear
> and blatant violation of 5 U.S.C. § 7116(a)(5).

(JA023-JA024).

To remedy these violations the Arbitrator ordered DDESS to restore the 2005 collective bargaining agreement, make employees whole for any financial losses that resulted from the DDESS's repudiation of the 2005 agreement (such as uncompensated hours or days of work to which employees were assigned), and to desist from bargaining in bad faith. (JA025).

## h.   The Authority vacates Mr. Orkin's Award

DDESS filed Exceptions to Mr. Orkin's award. (JA027). The Authority sustained these Exceptions and set aside the award. *Dep't of Def. Domestic Dependent Elementary & Secondary Schs.*, 72 F.L.R.A. 601 (2021) (JA367). The Authority held that the execution of the new agreement required by the parties' expiring agreement, ground rules, settlement agreement and the new agreement itself was not necessary for agency head review or for the agreement to take effect. "[T]he Arbitrator erred in concluding that there were unresolved bargaining

24

issues after the Panel issued its order," the Authority wrote. Therefore, according to the Authority, the date of "execution" was the date the Panel issued its order, even though no one signed anything. 72 F.L.R.A. at 604 (JA370).

The Authority also held that the Union could not question the enforceability of Article 18, § 3(f) (concerning make-up days) during arbitration:

> . . . Panel orders are not directly reviewable by the Authority or the courts. Instead, the Statute provides a particular avenue for parties to challenge a Panel order. Specifically, it is a ULP for an agency or a labor organization "to fail or refuse to cooperate in impasse procedures and impasse decisions." Only a party that fails or refuses to comply with a Panel order, and is consequently charged with a ULP, may then challenge the Panel's order. . . The Union's grievances directly contesting the Panel's order fail to respect the statutory framework for review of Panel orders and circumvent the procedure set in § 7119."

72 F.L.R.A. at 603 (footnotes omitted) (JA369). The Authority concluded that "the union's failure to follow the specific review procedure established by the Statute for challenging the Panel's order precluded the Arbitrator from ruling on whether Article 18, Section 3(f) was unenforceable." *Id*. (footnotes and internal quotations omitted). (JA369).

25

FEA-SR filed a motion for reconsideration (JA372), which was denied. *Dep't of Def. Domestic Dependent Elementary & Secondary Schs.,* 73 F.L.R.A. 149 (2022) (JA381). The Authority again mischaracterized the Union's grievances as "a *direct,* as opposed to a collateral, attack on the Panel's decision," and reiterated that "a party must decline to abide by a Panel order and wait until *after* it is charged with a ULP to contest such an order." 73 F.L.R.A. at 150, 151 (emphasis in original) (JA382, JA383).

## SUMMARY OF ARGUMENT

This brief will make three separate arguments, each of which provides an independent basis for setting aside the Authority's decisions and restoring Mr. Orkin's arbitration award.

**i.**    The Arbitrator found that "there were unresolved substantive bargaining issues" and "unresolved segments of the MLA [master labor agreement]," that "bargaining was never completed," and that there was not "in fact, a complete agreement" nor "mutual assent by both parties" to a new agreement. (JA013, JA023-JA024). Whether negotiations over a new agreement are complete or whether there are

26

issues which remain to be negotiated is a factual finding. *Amer. Fed'n of Gov't Emps., Local 3254*, 73 F.L.R.A. 325, 326 (2022). Similarly, an arbitrator's determination of whether a collective bargaining agreement exists is a factual finding and generally provides no basis for a "contrary to law" exception like the one filed by DDESS in this case. *Dep't of the Army, Corps of Engineers, Northwestern Div. and Seattle Dist.*, 64 F.L.R.A. 405, 407 (2010). Whether a collective bargaining agreement exists is a question of fact, not of law. *Dep't of Def., Def. Language Inst., Foreign Language Ctr*, 64 F.L.R.A. 735, 746 (2006).

The Authority erred in this case by failing to defer to the Arbitrator's factual findings. The Authority must apply the same standards for review of arbitration awards as the Federal courts in private sector labor-management disputes. 5 U.S.C. § 7122(a)(2). Courts are not authorized to review an arbitrator's factual findings. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Authority ostensibly applies the same deferential standard of review to an arbitrator's factual findings. *Dep't of the Air Force, Lowry Air Force Base*, 48 F.L.R.A. 589, 594 (1993). But it did not do so in this case.

The Authority erred when it wrote that the Arbitrator found that Article 18 was the only unresolved issue that remained after the Panel's decision. The Arbitrator found that there were multiple unresolved issues, and his failure to specifically identify them was of no consequence because arbitrators do not need to provide all the reasons for their findings. The Authority also improperly focused on the issue of whether the Arbitrator could review the legality of the Panel's imposition of Article 18, § 3(f). The Arbitrator found that as a purely contractual matter, the inconsistency between Article 18, § 3(f) and Article 11, §5(b) should have been resolved through further negotiations before a contract was finalized.

**ii.** The Authority erred when it held that the 30-day period for agency head review commenced as soon as the Panel issued its decision, and that execution of the agreement was unnecessary. The actual rule is that the 30-day period begins on "the date on which no further action is necessary to finalize a complete agreement." *Amer. Fed'n of Gov't Emps., Local 1815*, 69 F.L.R.A. 309, 319 (2016). Here, the parties agreed in writing on four separate occasions that the old agreement would remain in place and that the new agreement would not be sent

28

for agency head review nor implemented until it was signed by both parties. The Authority's decision in this case cannot be reconciled with its earlier holding that "parties may adopt ground rules that specify the conditions under which they will recognize an agreement as executed," *Ass'n of Civilian Technicians, Kentucky Long Rifle Chap.*, 70 F.L.R.A. 968, 969 (2018).

   **iii.**    The Authority erroneously mischaracterized the Union's grievances as a "direct appeal" of the Panel's decision. Rather, the grievances were a challenge to DDESS's implementation of the incomplete agreement. The validity of the Panel's imposition of Article 18, § 3(f) was one of many issues in the case, and a collateral one at that. The Authority has previously held in another case that involved the same parties that an arbitrator can indeed review the legality of a Panel decision when necessary to review a grievance alleging a contractual violation. *Dep't of Def. Educ. Activity*, 56 F.L.R.A. 119, 121 & n. 4 (2000). Even after the Authority issued its initial decision in this case, it overturned an award in which the arbitrator declined to determine whether the Panel improperly ordered other parties to adopt

permissive language into their contract. *Nat'l Labor Relations Bd.*, 72 F.L.R.A. 334 (2021).

Although the Authority has written in earlier cases that a Panel decision can be reviewed when a party is charged in an unfair labor practice case with non-compliance with a Panel decision, it has not previously held that this was the *only* forum in which the legality of a Panel decision could be questioned. The Authority's new restriction is one-sided because it effectively precludes a union from challenging a Panel decision because the union is not responsible for implementing collective bargaining agreements, and because agencies have no incentive to provide unions with an opportunity to review a Panel-imposed contract provision by filing a charge against it for failing to execute the agreement. And, in this case, the Authority held that the agreement went into effect even without the Union's signature. In contrast, an agency can readily obtain review of the propriety of a Panel imposed provision by refusing to implement an agreement, as DDESS did in *Dep't of Def., Domestic Dependent Elementary & Secondary Schs., Ft. Buchanan*, 71 F.L.R.A. 127, 132 (2019), *rev'd in part sub. nom. Antilles Consol. Educ. Ass'n v. FLRA*, 977 F.3d 10, 17 (D.C. Cir. 2020).

Finally, in several recent cases in which Federal unions challenged Panel decisions directly in the District Court, the Authority told the Court that the unions had an alternative meaningful opportunity for review of the Panel decisions even if they were not charged with an unfair labor practice, because the unions could file an unfair labor practice grievance against their employing agency, just as FEA-SR did here. The District Court accepted that argument and dismissed two of these cases on that basis, in part. The Authority is now judicially estopped from arguing that the only way a union can review a Panel decision is if an agency files an unfair labor practice charge against the union.

## STANDING

FEA-SR has standing because it was the successful grieving party in the underlying arbitration case and is aggrieved by the final order of the Authority setting aside the arbitration award that was in its favor. 5 U.S.C. § 7123(a).

31

## APPLICABLE STANDARD OF REVIEW

Judicial review of the Authority's decisions is provided by 5 U.S.C. § 7123, which incorporates the standard of review set forth in Section 706 of the Administrative Procedures Act. That section requires a court to set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The Supreme Court has warned that "deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia." *Bureau of Alcohol, Firearms and Tobacco v. FLRA*, 464 U.S. 89, 97 (1983). Courts "must not 'rubber-stamp . . . administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." *Id.* at 97-98 *quoting NLRB v. Brown*, 380 U.S. 278, 291-92 (1965). In addition, this Circuit has cautioned against applying a deferential standard of review to decisions of the Authority pro forma. *Dep't of the Navy, Naval Aviation Depot, Cherry Point, N.C. v. FLRA*, 952 F.2d 1434, 1438-39 (D.C. Cir. 1992). "Authority decisions that are 'incompatible with either the terms or the purpose of the controlling statute, or that conflict with prior FLRA

32

precedent' will be overturned." *Id*. at 1439 quoting *Amer. Fed'n of Gov't Emps., Local 32 v. FLRA*, 853 F.2d 986, 991 (D.C. Cir. 1988); *accord Internal Rev. Serv. v. FLRA*, 963 F.2d 429, 433 (D.C. Cir. 1992).

## ARGUMENT

I. **The Authority's initial and fundamental error was its failure to defer to Arbitrator Orkin's factual finding that bargaining over a successor agreement had not been completed and that the parties did not have a meeting of the minds over a new agreement.**

"As the Arbitrator's determination of the existence of a collective bargaining agreement is a factual finding to which we defer . . . contrary to law arguments generally provide no basis for finding an award deficient." *Dep't of the Army, Corps of Engineers, Northwestern Div. and Seattle Dist*., 64 F.L.R.A. 405, 407 (2010). And whether negotiations over a new agreement are complete or whether there are remaining issues subject to further bargaining is a factual finding to which the Authority claims to defer. *Amer. Fed'n of Gov't Emps., Local 3254*, 73 F.L.R.A. 325, 326 (2022). The Authority erred in this case by failing to defer to the Arbitrator's finding that there was not "in fact, a complete agreement," and by sustaining DDESS's Exceptions on a contrary-to-law basis instead.

Arbitrator Orkin said that "the issue was whether there was, in fact, a complete agreement." (JA013). The Authority has repeatedly held that "the question of the existence of a collective bargaining agreement is a question of fact, not a question of law." *Dep't of Def., Def. Language Inst., Foreign Language Ctr*, 64 F.L.R.A. 735, 746 (2006) (internal citation omitted); *accord Dep't of Homeland Security, Customs and Border Protection*, 61 F.L.R.A. 136, 137 (2005); *Dep't of Commerce, Patent and Trademark Office*, 60 F.L.R.A. 869, 880-81 (2005). Arbitrator Orkin then found that DDESS and the Union did not come to a complete agreement because "there were unresolved substantive bargaining issues," (JA013), and "bargaining was never completed," and that "the Agency engaged in unfair labor practices by its refusal to continue negotiations on the unresolved segments of the MLA [master labor agreement]." (JA023). But the Authority rejected these factual findings, writing that "there were no unresolved bargaining issues after the Panel issued its order." *Dep't of Def. Domestic Dependent Elementary & Secondary Schs.*, 72 F.L.R.A. 601, 604 (2021) (JA370).

The Authority has held that "[a] meeting of the minds - - which can be shown by an intention to abide by agreed-upon terms - - must

34

occur before a labor contract is created." *Def. Language Inst.,* 64

F.L.R.A. at 746. The Arbitrator found that DDESS and the Union did

not have such a meeting of the minds: "The essence of collective

bargaining requires mutual assent by both parties; that did not occur in

this case." (JA024).

That should have been the end of the matter.

The Authority must apply the same standards for review of

arbitration awards as the Federal courts in private sector labor-

management disputes. 5 U.S.C. § 7122(a)(2); *Nat'l Weather Serv. Emps.*

*Organ. v FLRA,* 966 F.3d 875, 881 (2020). "To resolve disputes about

the application of a collective-bargaining agreement, an arbitrator must

find facts and a court may not reject those findings simply because it

disagrees with them." *United Paperworkers Int'l Union, AFL-CIO v.*

*Misco, Inc.*, 484 U.S. 29, 38 (1987). "Courts are not authorized to review

the arbitrator's decision on the merits despite allegations that the

decision rests on factual errors . . ." *Major League Baseball Players*

*Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). The Authority purports to

accept this restriction on its jurisdiction to review arbitral awards, even

though it did not do so in this case:

35

> [W]e apply the principles of the Supreme Court in generally
> refusing to disturb the factual findings and determinations
> of arbitrators in the Federal sector. Exceptions constituting
> nothing more than disagreement with the arbitrator's
> factual findings and determinations on disputed or
> ambiguous evidence will not be found deficient as based on a
> nonfact and will be summarily denied.

*Dep't of the Air Force, Lowry Air Force Base*, 48 F.L.R.A. 589, 594

(1993); *accord Nat'l Treasury Emps. Union,* 64 F.L.R.A. 504, 506 (2010);

*Panama Canal Comm*., 54 F.L.R.A. 1316, 1323 (1998) (dismissing

exceptions challenging arbitrator's factual finding that there was a

valid collective bargaining agreement).

The Authority circumvented these well-established principles and

its own case law by focusing solely on the legal status of the contract

provision imposed by the Panel. We will address later whether the

Panel had the authority to impose Article 18, § 3(f) and whether that

decision was reviewable. But even assuming the Panel had legal

authority to impose this provision or that its imposition is not

reviewable, there remained a patent conflict in the agreement over the

issue of whether teachers would be paid for make-up days that the

Arbitrator said should have been resolved by the parties before it could

be said that they had reached a meeting of the minds on a successor

agreement.[7] "From a purely contractual perspective the contested

section is unenforceable," he wrote, reasoning that:

> The conflict between the two terms is evident: will
> employees be compensated at their earned hourly rate, or
> not at all for cancellation due to inclement weather
> conditions? The two segments are wholly at odds. . . A plain
> reading of the two sections clearly displays a conflict that
> should have been resolved through negotiations.
>
>       \*    \*    \*
>
> When the contested section was proposed by the Agency the
> conflict in terms may not have been evident. However, the
> Union's notification should have convinced the Agency of its
> likely unenforceability, and negotiations should have
> continued.

(JA019-JA020).

The Arbitrator did ***not*** find that "the only unresolved bargaining

issues were Article 18, Sections 1(a) and 3(f)" as the Authority wrote in

---

[7]  An accusation that a Panel-imposed provision "materially contradicts
another article in the parties' agreement. . . is not the same as
being 'contrary to the Statute or other applicable law, rule or
regulation.'" *Dep't of the Interior*, No. OALJ 15-05, 2014 WL 6085552, at
\*5 (Nov. 4, 2014).

its December 20, 2021 decision. 72 F.L.R.A. at 604. (JA370). The conflict between Article 18, § 3(f) and Article 11, § 5(b) may have been the only unresolved issue that the Arbitrator specifically identified, but the Authority has misread his decision when it characterized it as a finding that these were "the *only* unresolved bargaining issues." (emphasis added). "The reasons for arbitral rulings need not be spelled out in great detail. . . Nor may a court infer the non-existence of a particular reason merely from the award's silence on a given issue." *Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*, 823 F.3d 524, 533 (9th Cir. 2016) (cleaned up). "Arbitrator's awards are not judicial opinions . . . Accordingly, we do not require labor arbitrators to make the sorts of explicit or exhaustive 'findings of fact' we demand of district courts . . ." *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1206 (9th Cir. 1989) (en banc) (plurality opinion). "A court cannot infer, from the mere fact that the award . . . is silent on the subject . . . that the arbitrator did not consider the question . . ." *Id.* at 1213. Even the Authority recognizes that arbitrators are not required to set forth

specific findings in their awards. *Dep't of Energy, Off. of Sci. & Tech. Info.,* 63 F.L.R.A. 219, 221 (2009).

Moreover, at several points in his decision the Arbitrator did find that there were multiple unresolved bargaining issues following the issuance of the FSIP decision without specifying what they were. Note his use of the plural form on page 9:

> The Agency acknowledges that the review period begins on the date of the FSIP decision, but not if there were unresolved substantive bargaining issues, as there were in the present case.

(JA015). And again on page 17, the Arbitrator used the plural form when referring to "the unresolved segments of the MLA." (JA023). The record is replete with uncontested evidence that the parties met (via telephone) several times in January 2019 to complete negotiations over and resolve conflicting proposed language for Article 22, § 3 and to resolve other outstanding issues. (JA063, JA137-JA142). It was clear the parties did not have a meeting of the minds over whether the bank of hours negotiated in Article 18, § 1 could be used to extend each duty day by 30 minutes, or whether it was to be used only on an as-needed, occasional basis for training or meetings. Even the agency head

approval letter was contingent on the Union's acceptance of DCPAS's limiting interpretation of several provisions, to which the Union never agreed. These unresolved issues are far more substantive than the unresolved issue in *Internal Rev. Serv., North Florida Dist.*, 55 F.L.R.A. 222 (1999), in which the Authority found that the agency had not committed an unfair labor practice by failing to execute and implement a memorandum of understanding because the parties had not yet agreed on the signature block paragraph.

The Authority's decisions in this case suggest that the Union should have filed Exceptions to the Arbitrator's award because his decision did not mention Article 22, § 3 as an unresolved issue. 72 F.L.R.A. at 604, n. 45 (JA370); 73 F.L.R.A. at 152 (JA384). But "[w]here, as here, an award favors a party with its desired result, it is counterintuitive to expect, or fault, that party for not filing exceptions to that award." *Nat'l Treasury Emps. Union*, 72 F.L.R.A. 151, 154 (Member Abbott concurring). The Authority has previously dismissed exceptions that were based on an arbitrator's failure to make specific reference in his opinion to the contract provisions in dispute. "[I]t is well established that an arbitrator need not discuss the specific agreement

40

provisions involved, and the fact that the opinion accompanying an award did not mention such provisions does not establish that the arbitrator did not rule upon them." *Am. Fed'n of Gov't Emps., Local 2327*, 5 F.L.R.A. 189, 192 (1981). Nor is it surprising that Article 22, § 3 was not mentioned in Mr. Orkin's decision because its status was not even contested at arbitration. It was DDESS's own exhibits that demonstrated that this section remained open when the agreement was submitted to agency head review and then ostensibly went into effect. (JA122, JA137). The matter was addressed in the Union's post-arbitration brief (JA329) but was not even contested in DDESS's post-arbitration brief. (JA158).

## II.    The Authority erred by disregarding the parties' multiple agreements that the new contract would not be submitted for agency head review nor go into effect until it was executed by the parties.

The parties took great pains to avoid a dispute over whether they had reached a final agreement to a new contract by agreeing *four times* that the old one would not sunset and that the new one would not be submitted for agency head review without first signing the new agreement to signify that they had a meeting of the minds. In referring

41

to bilateral agreements (as opposed to those whose entirety is imposed by the Panel or interest arbitrator), the Authority has recognized that "[e]xecution of a written agreement is necessary to ensure that, in fact, there is a 'meeting of the minds' on the terms of the agreement." *Int'l Assn. of Masters, Mates & Pilots*, 36 F.L.R.A. 555, 560 (1990).

In setting aside Arbitrator Orkin's determination that both the ground rules and the new agreement itself required the parties' signatures before it could be submitted to agency head review, the Authority wrote that "[w]hen the parties are at impasse and submit unresolved bargaining issues to the Panel, the agreement is executed on the date the Panel issues its order." 72 F.L.R.A. at 604 (JA370). However, the application of this principle to this case cannot be reconciled with its recent "reaffirm[ation] that parties may set conditions on the execution of their agreements before triggering agency-head review." *Ass'n of Civilian Technicians, Kentucky Long Rifle Chap.*, 70 F.L.R.A. 968 (2018); *accord Fort Bragg Ass'n of Teachers,* 44 F.L.R.A. 852, 857-58 (1992).

This Court recently characterized these two FLRA cases as standing for the "uncontroversial principle that the parties themselves

42

may determine what steps should be required to execute – *i.e.,* finalize – their agreement." *Nat'l Treasury Emps. Union v. FLRA*, 45 F.4ᵗʰ 121, 125 (D.C. Cir. 2022). In *NTEU* this Court set aside another decision in which the Authority held that contracts can be automatically "executed" without the parties' signature when automatically extended pursuant to a continuance clause. This Court wrote that since the FSLMR Statute does not define "execute," "that term presumably derives its meaning from the background principles of contract law. Under those principles, a written agreement is executed when the parties complete the formalities necessary to bring the agreement into its final, legally enforceable form." *Id*. (internal citation omitted).

Arbitrator Orkin found that the formalities necessary to bring the new agreement into its final, legally enforceable form did not take place:

> The Union's position that the MLA [Master Labor Agreement] was not properly executed is correct. . . [T]he Ground Rules required the parties [to] formally execute the entire agreement prior to submission to Agency Head review once agreement is reached. . . Again, the MLA was neither signed nor properly approved by the Union as per the successor MLA, Article 35: "This Agreement will be considered executed on the date of *signatures by the parties designated signatories*."

43

(JA020). But the Authority held that these formalities were not necessary – even though DDESS and the Union contractually agreed, four times, in writing, that they were. The Authority's decision blithely ignored its prior holding that "parties may adopt ground rules that specify the conditions under which they will recognize an agreement as executed." *Ass'n of Civilian Technicians*, 70 F.L.R.A. at 969.

The Authority acknowledged that "where the parties continue substantive negotiations after the Panel issues its order, then the issuance of the Panel decision does not constitute the date the agreement is executed." 72 F.L.R.A. at 604 (JA370). But it was undisputed that the parties met virtually on two occasions after the Panel issued its decision (January 8 and 23) during which they debated and resolved numerous issues, including an agreement to Article 22, § 3. (JA122, JA137, JA141-JA143). There is an additional fallacy in the Authority's reasoning. To rely on whether additional bargaining took place after an FSIP decision is issued as the determining factor for whether additional bargaining *should* take place is circular. It is

44

tantamount to holding that the parties have fulfilled their bargaining obligations simply because one party refuses to bargain anymore.

In holding that the agreement was automatically executed when the Panel issued its decision because, ostensibly, no further negotiations took place, the Authority relied upon its earlier decisions in *Amer. Fed'n of Gov't Emps., Nat'l VA Council*, 39 F.L.R.A. 1055 (1991) and *Amer. Fed'n of Gov't Emps., Local 1815*, 69 F.L.R.A. 309 (2016). 72 F.L.R.A. at 604, n. 39. (JA370). However, in *Nat'l VA Council* the Authority wrote that the 30-day agency head review period had commenced because "there was no assertion, or other basis on which to conclude, that the parties engaged in further negotiations after issuance of the FSIP decision *or* that any further actions were necessary after such issuance for the parties to execute their agreement." 39 F.L.R.A. at 1057 (emphasis added). In other words, subsequent bargaining is not the only factor in determining whether the agency head review period commences. There may still be "further actions" that are necessary for the parties to execute their agreement as there were in this case. The Authority dropped them from the equation in this case. In *AFGE Local 1815* the Authority also made it clear that the date of execution that

45

triggers the 30-day agency head review period is "the date on which no further action is necessary to finalize a complete agreement" which, *in some cases*, may be the date the Panel issues its order. 69 F.L.R.A. at 319; *accord Patent Office Professional Assn.*, 41 F.L.R.A. 795, 803 (1991) ("[W]e hold that the date of execution that triggers the time limits for agency head review under section 7114(c)(2) relates to the date on which no further action is necessary to finalize a complete agreement . . .").

The obvious purpose of requiring signatures is to have the parties confirm that they agree that bargaining was done and that they have a meeting of the minds over a new contract. It would have avoided where we are today. And if there was a true meeting of the minds, and the Union unreasonably withheld its signature on the agreement, DDESS's recourse would have been to file an unfair labor practice charge alleging that the Union violated its duty to bargain in good faith, which includes the obligation "to execute on the request of any party to the negotiation a written document embodying the agreed terms" if an agreement is reached. 5 U.S.C. § 7114(b)(5); *Nat'l Treasury Emps. Union*, 72 F.L.R.A. 151 (2021). The Arbitrator noted that DDESS had this option to test the

46

validity of the Union's failure to execute the draft agreement DDESS
tendered to it instead of unilaterally implementing the agreement – an
act which he termed an "extraordinary and unprecedented step."
(JA023-JA024). In its reconsideration decision, the Authority accused
the Union of "circumvent[ing] the Statute" by filing its grievances. 73
F.L.R.A. at 150 (JA382). But it was DDESS and not the Union that
circumvented the Statute when it engaged in self-help instead of filing
an unfair labor practice charge. "[W]hile the parties may
understandably experience frustration throughout the collective-
bargaining experience, the Federal Service Labor-Management
Relations Statute provides avenues of redress, such as grievances,
unfair-labor-practice charges, and the like. Parties may take advantage
of these avenues as appropriate." *Dep't. of Agriculture*, 71 F.L.R.A. 491,
n. 8 (2019) (Kiko, Chairman) (denying request for general statement of
policy or guidance addressing alleged "dilatory tactics" employed by
"some unions").

**III.  Although Panel decisions are not subject to direct review by the Authority or by the courts, the legality of a Panel-imposed contract provision may be collaterally reviewed in arbitration when necessary to resolve a grievance.**

**A.  The Union's grievances did not seek direct review of the Panel's order. But under Authority case law, Arbitrator Orkin was permitted to consider the legality of the contract provision imposed by the Panel when resolving a grievance over DDESS's alleged unilateral imposition of a new agreement before bargaining had been completed.**

The Authority repeatedly mischaracterized the Union's grievances as an attempt to obtain direct review of a Panel order. 71 F.L.R.A. at 603 (JA369); 73 F.L.R.A. at 150 (JA382). The Authority was simply incorrect when it wrote that "the Union's grievances constitute a *direct*, as opposed to a collateral, attack on the Panel's decision." 73 F.L.R.A. at 151 (emphasis in original) (JA383). The Union did not seek direct review by filing a Petition to Review the Panel's decision in this Court, as did another union in *Council of Prison Locals v. Brewer*, 735 F.2d 1497 (D.C. Cir. 1984). Nor did the Union file a petition to review the Panel's decision directly with the Authority, as did the agency in *State of New York, Div. of Military and Naval Affairs*, 2 F.L.R.A. 185 (1979). Nor did the Union file suit against the Panel challenging its decisions as the unions did in *Ass'n of Admin. L. Judges v. Fed. Serv. Impasses*

48

*Panel,* No. CV 20-1026 (ABJ), 2021 WL 1999547 (D.D.C. May 19, 2021) and *Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel,* 552 F. Supp. 3d 21 (D.D.C. Feb. 10, 2021). Neither of the Union's grievances directly challenged the Panel's actions - only that of DDESS. And the Panel's decision was mentioned only in passing in the second grievance as part of the Union's explanation for why it wouldn't sign the purported draft agreement. (JA120, JA133). The Authority's assertion that "[t]he Union's grievances directly contesting the Panel's order fail to respect the statutory framework for review of Panel orders and circumvent the procedure set in § 7119" mischaracterizes what was actually written in the grievances. 72 F.L.R.A. at 603 (footnotes omitted) (JA369).

Whether the Panel's decision was valid wasn't even among the issues which either party submitted to the Arbitrator for resolution. (JA159-JA160, JA278). In fact, in its arbitral brief the Union made it clear that "the issue of whether or not FSIP exceeded its jurisdiction is not an issue in this case." (JA303). Rather, the issue of the enforceability of one provision of the Panel's decision arose solely as a collateral matter in an underlying dispute over whether DDESS

breached the ground rules and other agreements by submitting the new agreement to agency head review without the Union's signature and whether DDESS committed an unfair labor practice by implementing the new agreement and repudiating the old one.

Although § 7119 provides that the decisions of the Panel are binding, "[i]t is clear from the structure of the statute that the term 'binding' is not absolute" but only "to the extent that they are within the Panel's statutory authority." *Amer. Fed'n of Gov't Emps. v. FLRA*, 778 F.2d 850, 856 (D.C. Cir. 1985) (affirming FLRA Interpretation and Guidance that legality of Panel decisions is subject to agency head review). The Authority has held that arbitrators may determine whether a Panel decision is valid when it is necessary to resolve a grievance that alleges that an agency breached a contract or committed an unfair labor practice and has even overruled an arbitrator when he determined that he had no jurisdiction to do so. In a case involving *the same parties as in the instant case* the Authority held that management had standing to challenge a Panel order in arbitration. "[T]he validity of such a provision may be raised in other appropriate proceedings (such as grievance arbitration and unfair labor practice proceedings) and, if

50

the agreement provision is found to be in violation of the Statute or any other applicable law, rule or regulation, it would not be enforceable but would be void and unenforceable," the Authority wrote. "[A] collateral proceeding to contest the legality of contract language is permissible." *Dep't of Def. Educ. Activity*, 56 F.L.R.A. 119, 121 & n. 4 (2000) (setting aside Panel-imposed provision as contrary to appropriations law).

Less than a year after the Authority issued its initial decision in this case and while the Union's Motion for Reconsideration was pending, the Authority chastised another arbitrator who declined to do exactly what it said Arbitrator Orkin could not do: determine whether proposals submitted to and imposed by the Panel were a permissive subject of negotiations over which the union had no obligation to bargain.[8] *Nat'l Labor Relations Bd.,* 72 F.L.R.A. 334 (2021). In both *FEA-SR* and *NLRBU*, the Panel rejected the unions' arguments that the proposals submitted by the agency were permissive and imposed

---

[8]  "[T]he plain language of the Statute specifically contemplates that the Authority (not the Panel) will resolve any questions relating to the parties' obligation to bargain." *Interpretation and Guidance*, 11 F.L.R.A. 626, 629 (1983).

them over the unions' objection to the Panel's jurisdiction to do so. *Id.* Just as the Authority did in the *FEA-SR* case, the arbitrator in *NLRB* held that § 7119 of the Statute (which makes Panel decisions binding), superseded the arbitrator's authority to address the union's grievances. 72 F.L.R.A. at 335. But the Authority remanded the *NLRB* case, writing that "the Arbitrator is authorized to determine the legality of the Agency's actions in bringing the allegedly permissive subject to FSIP" notwithstanding § 7119. 72 F.L.R.A. at 339. And that's exactly what Arbitrator Orkin did. "The Union's position that Article 18, Section 3(f) is a permissive bargaining subject is accurate; the subject matter was already covered by Article 11, Section 5. Therefore, the Union had the legal right to withdraw from bargaining on this term," he wrote. (JA021).

In contrast to its rulings in these other arbitration cases, the Authority held in the instant case that "[o]nly a party that fails or refuses to comply with a Panel order, and is consequently charged with a ULP, may then challenge the Panel's order." 72 F.L.R.A. at 603 (JA 369). Indeed, earlier cases upon which the Authority relied stated that a Panel decision *may* be reviewed in this way. *E.g., Nat'l Treasury Emps.*

52

*Union*, 71 F.L.R.A. 962, 962-93 (2020); *U.S. Army Corps of Eng'rs, Kan. City Dist.*, 16 F.L.R.A. 456, 459 (1984) (cited at 72 F.L.R.A. at 603, n.21 and 73 F.L.R.A. at 150, n.10, respectively) (JA369, JA382). But that is different from saying that this is the only forum or manner in which the validity of a Panel decision may be questioned. In *State of N.Y., Div. of Mil. & Naval Affs.,* 2 F.L.R.A. 185, 188 (1979), cited in footnote 31 of the Reconsideration Decision, the Authority wrote that *Authority* review of a Panel order may be obtained "only" after a party is charged in an unfair labor practice case with noncompliance. But that was as opposed to *direct appeal to the Authority* and did not consider or address the role an arbitrator might play when the issue arises as a collateral matter in a grievance. Any "exclusivity" of this sole route established in *Div. of Mil. & Naval Affrs.* was abandoned shortly thereafter when the Authority determined that the legality of a Panel decision may be reviewed in a negotiability appeal following agency head disapproval of a contract containing a Panel-imposed provision. *Interpretation and Guidance,* 15 F.L.R.A. 564 (1984), *aff'd Amer. Fed'n of Gov't Emps. v. FLRA*, 778 F.2d 850 (D.C. Cir. 1985). And the Authority disregarded this ostensibly exclusive route when it held in *Dep't of Def. Educ.*

53

*Activity*, 56 F.L.R.A. at 121*,* that an arbitrator may review the legality and hence the enforceability of a Panel-imposed provision when a contract violation is alleged.  The Authority has never before – nor has it since – applied this rule to preclude collateral review of the legality of a Panel decision when the issue arose in an arbitration case.

Chairman DuBester concurred in the denial of the Union's motion for reconsideration, but his concurrence reads like a dissent that fully agrees with the Union's argument:

> I am concerned that the majority's decision could be misconstrued to improperly limit the methods by which a union can challenge matters pertaining to an order by the Federal Service Impasses Panel (Panel).
>
> In [72 F.L.R.A. 601] the majority vacated the award in part because the Union had "circumvent[ed] the procedure set [forth] in §7119."  And as part of its analysis on this point, the majority concluded that "[o]nly a party that fails or refuses to comply with a Panel order, and is consequently charged with [an unfair labor practice], may then challenge the Panel's order." The majority reiterates this conclusion in today's decision. But as the Union points out in its motion for reconsideration, a union may challenge matters pertaining to a Panel decision by bringing an unfair labor practice charge alleging that an agency action related to the Panel proceeding constituted an unfair labor practice.
>
> For instance, it is well-established that a party commits an unfair labor practice by bargaining to impasse over permissive subjects. Additionally, an agency could be found liable for failing or refusing to bargain in good faith

over matters left unresolved by a Panel decision. Indeed, in its motion for reconsideration, the Union argues that it is entitled to relief precisely because there were unresolved bargaining issues at the time the Agency sought Agency-head review.

73 F.L.R.A. at 153 (JA385) (footnotes omitted). Chairman DuBester's feared misconstruction of the majority's decision is, in fact, its explicit holding which, as Chairman DuBester explains, contradicts other Authority precedent.

In a footnote in the order denying reconsideration, Member Grundmann also appears to agree with the Union's argument. "[T]he majority decision does not limit the method by which a union can challenge matters pertaining to an order by the Panel and should not be viewed as such" she wrote. 73 F.L.R.A. at 152, n. 32 (JA384). But that is precisely what the initial and reconsideration decision held and was the basis for setting aside Mr. Orkin's award. The order denying reconsideration, in which Member Grundmann joined and in which Chairman DuBester concurred, clearly states:

[A] party must decline to abide by the Panel order and wait until *after* it is charged with a ULP to contest such an order. . . We note that the scheme of review of Panel orders is

55

statutory in nature, and, thus, any modification to it must
come from Congress, not the Authority.

73 F.L.R.A. at 150 (JA382) (emphasis in original). And again, in another

footnote, the majority wrote: "[W]e reiterate that Panel orders are not

subject to judicial review, and review can only be obtained through ULP

procedures initiated by a party seeking compliance with a Panel order."

73 F.L.R.A. at 151, n. 24 (JA383). So here we have two of the three

Members of the Authority disavowing the majority holding in which

they either joined or concurred.

**B.    The critical flaw in the Authority's *FEA-SR* decisions
is their asymmetry. These decisions allow agencies to
challenge the legality of a Panel decision, but
functionally preclude unions from doing so.**

An agency may obtain review of the legality of any Panel decision

simply by refusing to implement it and waiting for a union to file a

charge or grievance alleging a violation of (a)(6), which it will surely do.

If the union fails to do so, the agency has effectively obtained the

remedy it seeks - relief from compliance with a Panel decision it

dislikes.

A union on the other hand does not have a parallel avenue to

review the legality of a Panel decision it believes to be illegal. The

56

decisions under review suggest that a union's remedy is to refuse to sign the imposed agreement and wait for the agency to file a charge alleging that the union violated (b)(6). This is fallacious reasoning - not just because there is no incentive for an agency to file such a charge (there is no reason an agency would provide a union with an opportunity to challenge the Panel's decision), but because, as the Authority noted in its December 20 decision, agreements imposed by the Panel are not subject to execution. 72 F.L.R.A. at 604 (JA370).

Nor can the union wait for the agency to file a charge alleging that the union has failed to comply with the Panel's decision, because implementation of an agreement does not depend on the union's actions; nor can compliance with a Panel's decision be thwarted by a union's inactions. Because a collective bargaining agreement sets the terms and conditions of employment for those it covers, and management rather than the union is responsible for implementing them, in most cases the only way that a union can refuse to comply with a Panel-imposed decision is to have its members withhold their labor. This would lead not only to the decertification of the union, (*see Prof. Air Traffic Controllers Organ.*, 7 F.L.R.A. 34 (1981)), but the termination and

57

potential criminal prosecution of the union's leaders and its members. 5 U.S.C. § 7311, 18 U.S.C. § 1918.  In its reconsideration decision, the Authority cited just two cases in the history of the Statute in which an agency charged a union with either failure to execute or failure to comply with an agreement that contained Panel-imposed provisions. 73 F.L.R.A. at 150 n.16 (JA382). But by countenancing DDDES's unilateral imposition of the new agreement even though it did not file a charge against the Union, the Authority has effectively denied unions what it claims to be their sole avenue of review. Because of the Authority's decisions in this case other agencies will, in the future, simply engage in similar "self-help" rather than respect what the Authority claims to be the statutory framework for review.

The irrationality of the Authority's December 20, 2021 decision is summed up in its criticism of "[t]he Union's failure to follow the 'specific review procedure[ ] established by the [S]tatute' for challenging the Panel's order." 72 F.L.R.A. at 603 (JA368). How could FEA-SR have followed that procedure? *Does the Authority suggest the Union could have filed an unfair labor practice charge against itself?*

58

C.   **The Authority had it right when it told the District Court in 2020 that unions have a statutory right to obtain review of the legality of a Panel decision by filing a charge or grievance alleging that an agency committed an unfair labor practice by unilaterally implementing an ostensibly invalid Panel-imposed agreement. It is now judicially estopped from arguing otherwise**.

In 2020, several Federal employee unions filed separate suits in the District Court seeking to set aside Panel orders. These suits alleged, *inter alia*, that the Panel's orders were invalid because of an alleged Appointments Clause violation and/or because the Panel improperly took jurisdiction in the absence of an actual impasse in negotiations, and for other reasons. The Panel and the Authority (which was also a defendant in three of these cases) moved to dismiss based on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), arguing that the unfair labor practice procedures of the FSLMR Statute is the exclusive means of obtaining judicial review. The plaintiff unions argued that the Statute did not provide the required opportunity for meaningful judicial review because review depended upon the willingness of the agencies with whom the unions had been bargaining to file an unfair labor practice charge against the unions for noncompliance with the Panel's orders, just as the Authority held in the *FEA-SR* decisions under

59

review. However, in its brief the Authority wrote that even if the

agencies failed to file an unfair labor practice charge, the unions had an

opportunity for meaningful judicial review of the Panel's decision

because they could (as did the FEA-SR) file a grievance and arbitrate

the issue of whether the agencies committed an unfair labor practice by

refusing to continue bargaining over provisions that differ from those

imposed by the Panel and by implementing the Panel-imposed

agreement. In its Motion to Dismiss the suit brought by the Association

of Administrative Law Judges, the Authority wrote:

> [I]f SSA declines to pursue an unfair labor practice charge or
> grievance against AALJ, it still may have an open path to
> judicial review. AALJ itself may attempt to file a charge or
> grievance against SSA based on SSA simply imposing terms
> in a new CBA in the face of AALJ's refusal to abide by the
> Panel's decision. To the extent AALJ believes that any
> Panel-imposed provisions are contrary to law, it may argue
> as much in the ensuing unfair labor practice proceeding.
>
> Additionally, AALJ could seek to reopen bargaining with
> SSA on the Panel-imposed articles, and, if SSA refuses to
> respond, then file an unfair labor practice charge or
> grievance.

ECF No. 22 at 21-22 (citations omitted) (reproduced as Addendum

B to this brief). The District Court accepted this argument and

dismissed the case, writing:

> Plaintiff also argues that the procedure cannot be found to offer meaningful review because if it were to defy the Panel in order to trigger an unfair labor practice allegation, it would be the agency's General Counsel who would have to decide to bring a complaint, and the General Counsel might, in his discretion, decline to do so. Pl.'s Opp. at 8. But this argument is speculative, and the statute provides an alternative avenue for plaintiff to obtain review in any event. It may submit an unfair labor practice action to an arbitrator, whose decision is reviewable by the Authority, and then by a court of appeals.

*Ass'n of Admin. L. Judges v. Fed. Serv. Impasses Panel,* No. CV 20-1026

(ABJ), 2021 WL 1999547, at *7 (D.D.C. May 19, 2021).

The Authority made the same argument in near verbatim

language in its motions to dismiss the suits brought by both the

National Labor Relations Board Professional Association (*Nat'l Labor*

*Relations Board Prof. Assn. v. FSIP*, No. 8:20-cv-888-ABJ, ECF No. 32

at 22-23, addendum C hereto) and by the National Veterans Affairs

Council (ECF No. 16 at 23, Addendum D). *NLRB Prof. Assn.* was

voluntarily dismissed. The District Court dismissed the Veterans

Affairs Council's suit, concluding that:

> [T]he Union likely can bring an unfair labor practice charge
> against the VA, even if the VA does not initiate
> proceedings. . . .  *If the VA refuses to negotiate or opts to*
> *impose the Panel's decision unilaterally, the Union could file*
> *its own unfair-labor-practice charge directly against the VA.*

*Nat'l Veterans Affs. Council,* 552 F. Supp. 3d at 30. (emphasis added).

In *Nat'l Weather Serv. Employees Org. v. FSIP*, No. 1:20-CV-1563

(TJK), the Authority's Solicitor also argued that the plaintiff union had

multiple options for reviewing the legality of a Panel decision by filing a

charge or grievance, and that it did not need to wait for the NWS to file

a charge against it. In its Motion to Dismiss, the defendants wrote:

> The Union may have affirmative options for bringing an
> unfair labor practice charge as well, where it could raise the
> same arguments against the validity of the Panel decision. . .
> Additionally, any unfair labor practice charge may be
> grounds for a grievance resolved pursuant to the parties'
> negotiated grievance procedures.

ECF No. 13 at 22-23 (Addendum E) (citations omitted). And again, in

its reply brief, the defendants wrote:

[T]he Union may have its own options for bringing an unfair labor practice charge or grievance against NWS, depending on the factual circumstances surrounding the parties' bargaining history and any potential continued bargaining moving forward. For starters, if the Union believed, as it argues here, that the Panel exercised jurisdiction when the parties were not actually at impasse, it could have brought an unfair labor practice charge arguing that NWS refused to "negotiate in good faith" when it sought the Panel's assistance. . . . Other factual scenarios going forward may still allow the Union to bring other unfair labor practice charges. . . Because grounds for bringing an unfair labor practice charge are highly fact-dependent, it would be impossible at this stage to identify with certainty the range of options the Union may have available to it, or whether the Union's arguments in support of any claim would be successful; *but the point is the Statute at least provides avenues for the Union to challenge adherence to allegedly unlawful Panel proceedings or decisions.*

ECF No. 17 at 16-17; (Addendum F) (emphasis added).  (The *NWSEO* case was eventually voluntarily dismissed).

The arguments the Authority made in these cases and the decisions in *Ass'n of Admin. L. Judges* and *Nat'l Veterans Affs. Council* cannot be reconciled with the Authority's holding in the decisions under review that the Union must wait until DDESS files an unfair labor practice charge against it. When this was brought to its attention in the Union's Motion for Reconsideration, the Authority repudiated the result it had brought about. "To the extent that these court decisions suggest

63

that a party could directly contest a Panel order by filing a ULP grievance, we reiterate that Panel orders are not subject to direct review, and review can only be obtained through ULP procedures initiated by a party alleging noncompliance with a Panel order," wrote the Authority. 73 F.L.R.A. at 151, n. 24 (JA383).

But the Authority can't get off the hook that easily.

The doctrine of judicial estoppel provides that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, it may not thereafter assume a contrary position, simply because its interests have changed. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Judicial estoppel may apply against the government when equitable estoppel would not. *United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995). While there is no exhaustive formula for determining whether judicial estoppel should apply, there are three key factors which inform the decision whether the balance of equities favor applying the doctrine in a particular case, all of which are present here:

(1) whether the party's later position is "clearly inconsistent" with its earlier position;

64

(2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and

(3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Temple Univ. Hosp., Inc. v. NLRB,* 929 F.3d 729, 733 (D.C. Cir. 2019) (*quoting New Hampshire v. Maine* at 750-751).

Failure to apply judicial estoppel in this case, and affirmation of the Authority's ruling that a union may only challenge the legality of a Panel decision if an agency files a charge against it, would undermine the District Court's decisions that held that unions have a "meaningful opportunity" to challenge illegal Panel decisions by initiating their own charge or grievance. It would inevitability invite Federal unions to again seek review of Panel decisions in the District Court.

## CONCLUSION

For the foregoing reasons, the Court should set aside the

Authority's decisions in 72 F.L.R.A. 601 and 73 F.L.R.A. 149 and

reinstate Arbitrator Orkin's award.

<div style="margin-left:50%">

Respectfully submitted,

/s/ Richard J. Hirn

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
richard@hirnlaw.com

Attorney for the Federal Education
Association Stateside Region/NEA
D.C. Bar No. 291849

BENJAMIN HUNTER
General Counsel
Federal Education Association
Stateside Region/NEA
329 East 89th Street, 4W
New York, NY 10128
202-834-3427
bhunter@nea.org

SUZANNE SUMMERLIN
Deputy General Counsel
Federal Education Association/NEA
1201 Sixteenth Street, NW
Washington, DC 20036
202-531-6803
ssumerlin@nea.org
D.C. Bar No. 1044859

</div>

## FED. R. APP. P. RULE 32(a) CERTIFICATION

Pursuant to Fed. R. App. P. 32(a)(7)(B)(i), I hereby certify that this brief is double-spaced (except for extended quotations, headings, and footnotes) and is proportionally spaced, using Century Schoolbook font, 14-point type. Based on a word count of my word processing system, this brief contains fewer than 13,000 words. It contains 12,980 words excluding exempt material.

Respectfully submitted,

/s/ Richard J. Hirn

RICHARD J. HIRN
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
202-274-1812
richard@hirnlaw.com

Attorney for the Federal Education
Association Stateside Region/NEA
D.C. Bar No. 291849